UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NAPLES CHEER ACADEMY INC.,
a Florida corporation d/b/a Naples
Cheer Revolution,

        Plaintiff,

v.                                                                  Case No: 2:25-cv-296-JLB-KCD

NAPLES ELEMENT ALL STARS,
LLC, a Florida limited liability
company, NAPLES ELEMENT
HOLDINGS, LLC, a Delaware limited
liability company, SARAH GERMAIN,
individually, and AMY KWIAT,
individually,

        Defendants.
_____/

## **ORDER**

This matter is before the Court on Plaintiff Naples Cheer Academy Inc.'s ("Plaintiff" or "NCA") Ex-Parte Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. 5), wherein NCA seeks to: (1) require Naples Element All Stars, LLC, Naples Element Holdings, LLC, Sarah Germain, and Amy Kwait (together, the "Defendants") to preserve all documents and information, in whatever form it exists, that are relevant to the claims in Plaintiff's Verified Complaint; (2) enjoin the Defendants from using or accessing any trade secrets, proprietary information or confidential information belonging to Plaintiff in any capacity except as it relates to the defense of the instant action; (3) enjoin the Defendants from soliciting, doing business with, or servicing any current or prospective client,

customer, or account of NCA or its affiliates; (4) enjoin the Defendants from employing any staff employed by NCA from November 2024 through present day; (5) provide a detailed accounting of all funds and other benefits of economic value attributable directly or indirectly to the activities of Defendant Naples Element All Stars; and (6) enjoin the Defendants from conducting their grand opening of the Naples Element All Stars gym currently scheduled for April 26, 2025.  (Doc. 5).

On April 14, 2025, NCA filed this lawsuit against Defendants for misappropriation of trade secrets under the Defend Trade Secrets Act (the "DTSA") (Count I) and under the Florida Uniform Trade Secrets Act (the "FUTSA") (Count II); tortious interference with business relationships (Count III); and violation of the Florida Deceptive and Unfair Trade Practices Act (Count IV).  (Doc. 1 at 10–12). Plaintiff now seeks a temporary restraining order and preliminary injunction, arguing that Plaintiff has a substantial likelihood of success on its DTSA, FUTSA, and tortious interference claims.  (Doc. 5).

For the reasons explained below, the Court concludes that Plaintiff has demonstrated, at this stage, a substantial likelihood of success on the merits of its DTSA claim, a likelihood of irreparable injury in the absence of a temporary restraining order issued before Defendants can be heard in opposition, that the equities weigh in Plaintiff's favor, and that public interest favors injunctive relief. Accordingly, Plaintiff's Ex-Parte Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. 5) is due to be **GRANTED** to the extent that a

temporary restraining order shall be issued as set forth below. The Court will set a hearing on Plaintiff's motion for a preliminary injunction by separate order.

## JURISDICTION AND VENUE

The Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a). Based on the allegations in the Verified Complaint, the Court concludes that it can properly exercise personal jurisdiction over Defendants and that venue properly lies in the Middle District of Florida. *See* 28 U.S.C. § 1391.

## FACTS[1]

In February 2022, Charles and Carl Nocera formed NCA, a cheerleading academy that provides coaching, training, and competitive programming to youth participants in Collier County, Florida. (Doc. 1 at ¶¶ 3, 8, 9). NCA provided tumbling classes, birthday parties, open gym, and other special events, including summer and daycare camps. (*Id.* at ¶ 9). NCA developed relationships with clients,

---

[1] The Supreme Court has explained that "all of the well-pleaded allegations of [a] complaint and uncontroverted affidavits filed in support of [a] motion for a preliminary injunction are taken as true." *Elrod v. Burns*, 427 U.S. 347, 350 n.1 (1976). Some courts in this circuit have applied that rule to review of requests for temporary restraining orders as well. *See Am. Builders and Contractors Supply Co. Inc. v. McPherson*, No. 3:23-cv-24132, 2023 WL 11760715, at *1 n.2 (N.D. Fla. Sept. 12, 2023) (citations omitted) (Plaintiff's human resources manager "verified the complaint and authenticated the documents attached to the TRO motion. The Court accepts the well-pled allegations of the Verified Complaint and the supporting affidavit as true for purposes of this Order"); *Welsh v. Martinez*, No. 2:22-cv-216, 2022 WL 2356971, at *1 n.1 (M.D. Fla. June 30, 2022) (citing *Eldrod*, 427 U.S. at 350 n.1) (in the context of resolving a motion for a temporary restraining order, "[g]iven the case's procedural posture, the facts will be presented in a light most favorable to [Plaintiff]").

3

vendors, competition administrators. (*Id.* at ¶ 11). It further developed confidential and proprietary information including customer lists, pricing models, marketing strategies, internal policies, coaching materials, and operation plans to develop customer lists. (*Id.*). NCA took steps to protect this information by setting up services with login, internet protocols, and other tracking information. (*Id.* at ¶ 12).

NCA hired Defendant Sarah Germain as NCA's office gym manager and coach. (*Id.* at ¶ 13). Because her position was one of seniority, she had access to NCA's confidential and proprietary information. (*Id.* at ¶ 25). This information included client roles, sensitive customer data, pricing models, and other information. (*Id.*). Defendant Germain befriended Defendant Amy Kwait, a customer of NCA, who enrolled her minor child at NCA. (*Id.* at ¶¶ 14, 29).

Plaintiff alleges that Germain and Kwait began a scheme to poach clients and staff and otherwise interfere with NCA to form a competing business, Defendant Naples Element All Stars, LLC. (*Id.* at ¶¶ 6, 7, 29). According to the Verified Complaint, Naples Element All Stars purchased a website domain on December 5, 2024, to begin preparing its new business. (*Id.* at ¶ 24). The company began posting on social media on January 2, 2025. (*Id.* at ¶ 19). On January 9, 2025, Defendant Naples Element All Stars, LLC, was formed under the laws of the state of Florida. (*Id.* at ¶ 20). Defendant Naples Element Holdings, LLC, was listed as its manager.[2] (*Id.*). Plaintiff alleges that Germain and Kwait organized Naples Element Holdings, LLC. (*Id.* at ¶¶ 4, 5, 21).

---

[2] The Verified Complaint asserts that Naples Element Holdings, LLC, was formed under Delaware law. (*Id.* at ¶ 5).

While employed at NCA, Plaintiff approached Defendant Germain to sign a non-compete agreement on January 22, 2025. (*Id.* at ¶ 26). Defendant Germain did not sign an agreement and resigned that day. (*Id.*). Shortly *after* resigning, Plaintiff alleges that Germain logged into NCA's database and downloaded enrollment reports, class rolls, user information, and other sensitive information about specific classes and customers. (*Id.* at ¶¶ 27, 28). Plaintiff alleges that Defendants are utilizing the downloaded information to "undercut pricing on the per class basis in order to drive Plaintiff out of business" and have been marketing to Plaintiff's current customers. (*Id.* at ¶¶ 31, 39). Plaintiff further alleges that Defendants have solicited Plaintiff's sponsors and vendors. (*Id.* at ¶¶ 38, 40). Naples Element All Stars' website lists Germain as "program director and coach" and Kwait as a "community director." (*Id.* at ¶ 32). The company intends to hold its new gym's "grand opening" on April 26, 2025. (*Id.* at ¶ 31).

## DISCUSSION

Federal Rule of Civil Procedure 65 provides that the Court may issue a temporary restraining order without written or oral notice to the adverse party only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

The Court may grant a temporary restraining order if Plaintiff demonstrates: (1) a substantial likelihood of success on the merits; (2) a likelihood of suffering irreparable injury without the restraining order; (3) that the threatened injury to it outweighs the harm the restraining order would cause other litigants; and (4) that the restraining order would not be adverse to the public interest. *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034–35 (11th Cir. 2001). "The purpose of a temporary restraining order, like a preliminary injunction, is to protect against irreparable injury and preserve the status quo until the district court renders a meaningful decision on the merits." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1231 (11th Cir. 2005). A temporary restraining order is an "extraordinary remedy" to which the Court should "pay particular regard for the public consequences" of granting. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted).

I.  **Substantial likelihood of success on the merits**

Plaintiff asserts a claim against Defendants for violation of DTSA and FUTSA. (Doc. 1 at 10–11). "Both the federal [DTSA] and [FUTSA] authorize a court to grant an injunction to prevent 'actual' or 'threatened' misappropriation of a 'trade secret.'" *Primo Broodstock, Inc. v. Am. Mariculture, Inc.*, No. 2:17-cv-9-FtM-29CM, 2017 WL 1502714, at *10 (M.D. Fla. Apr. 27, 2017) (citing 18 U.S.C. § 1836(b)(3)(A)(i); Fla. Stat. § 688.003(1)).

Under the DTSA, the term "trade secret" means "all forms and types of financial, business, scientific, technical, economic, or engineering information" if

"the owner thereof has taken reasonable measures to keep such information secret" and "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3). Thus, Plaintiff must establish that Defendants: "(i) possessed 'information' of 'independent economic value' that (a) was lawfully owned by [Plaintiff] and (b) for which [Plaintiff] took reasonable measures to keep secret, and (ii) 'used' and/or 'disclosed' that information, despite (iii) a duty to maintain its secrecy." *Primo Broodstock, Inc.*, 2017 WL 1502714, at *10 (citing *Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998)). "In a trade secret action, the plaintiff bears the burden of demonstrating both that the specific information it seeks to protect is secret and that it has taken reasonable steps to protect this secrecy." *Am. Red Cross*, 143 F.3d at 1410 (citation omitted).

Plaintiff claims that Defendants misappropriated Plaintiff's confidential and proprietary information, such as client roles, sensitive customer information, pricing, and other data, to start a competing business, Naples Element All Stars. (Doc. 1 at ¶¶ 27, 28, 39). Plaintiff's Officer and Director, Charles Nocera, indicated that Germain downloaded confidential and proprietary information owned by Plaintiff in the sixty (60) days up to and after she resigned. (Doc. 5-1 at ¶ 14, 17–40). Mr. Nocera provided a forensic report that shows a sixty (60) day snapshot of Germain's activity in NCA's database. (Doc. 5-1 at 17–47). That forensic report

shows that Germain downloaded enrollment data, class rolls, instructor certifications, and other sensitive data on the day she resigned. (*Id.* at 17–21). He explains that Germain downloaded this information onto her personal computer. (*Id.* at ¶ 15). Mr. Nocera contends that this information is being used "intentionally to cause irreparable harm to my company and to my [goodwill]" and that Naples Element All Stars "[r]amped up their advertisement and social media campaign" after the downloads. (*Id.* at ¶¶ 20, 21).

Taking these factual allegations and the declarations filed in support of the Motion as true, the Court finds that Plaintiff has demonstrated a substantial likelihood of success on the merits of its misappropriation of trade secrets claims under the DTSA.

Because Plaintiff established a likelihood of success on the merits as to the DTSA claim, the Court declines at this juncture to address the remaining claims. *See Sapphire Consulting Servs. LLC v. Anderson*, No. 6:20-cv-1724, 2021 WL 1053276, at *3 (M.D. Fla. Feb. 12, 2021) (citation omitted) ("When a plaintiff asserts multiple claims as a basis for a preliminary injunction, the plaintiff 'need only establish a substantial likelihood of success on one claim.'").

## II. Irreparable injury

"An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990). Plaintiff argues that it faces a likelihood of irreparable injury absent a temporary restraining order because

8

Defendants' conduct has "inflicted irreparable harm to NCA's relationship to the [sic] with [its] [c]ustomers and associated [goodwill]." (Doc. 5 at 13).  Further, Plaintiff states "there is no way currently to ascertain the degree of damage that NCA will sustain by Defendants['] continued misconduct, including Defendants' continued solicitation of NCA's customers and how many customers have been and will be lost if [Defendants are] allowed to continue to use the confidential, trade secret information, [they] misappropriated." (*Id.*).

The Eleventh Circuit has ruled that "the loss of customers and goodwill is an irreparable injury." *Ferrero v. Associated Materials Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991) (internal quotation marks omitted).  Moreover, although the Eleventh Circuit has not explicitly found as much, some courts within this circuit have found that "[i]rreparable harm is presumed when use of customer lists and solicitation of customers occurs." *See Convergent Nonprofit Solutions, LLC v. Wick*, No. 6:19-cv-1157-Orl-40DCI, 2019 WL 7423549, at *7 (M.D. Fla. Sept. 5, 2019) (quoting *Lynch v. Silcox*, No. 01-8800-CIV, 2001 WL 1200656, at *5 (S.D. Fla. Oct. 4, 2001)).

Here, Plaintiff alleges in its Verified Complaint that Germain and Kwait "entered into a scheme to interfere with NCA's business and take clients and staff to damage Plaintiff's business." (Doc. 1 at ¶ 29).  As stated, Plaintiff further argues that Germain "logged in to [NCA's] database and misappropriated information for her own use and for [Naples Element All Stars'] use reports of enrollment, class rolls, user information, and the like." (*Id.* at ¶ 27).  Mr. Nocera also provided a forensic report that shows that Germain, on the day she resigned, downloaded

9

enrollment data, class rolls, instructor certifications, and other sensitive data. (Doc. 5-1 at 17–21). He asserts that this information is being used "intentionally to cause irreparable harm to my company and to my [goodwill]" and that Naples Element All Stars "[r]amped up their advertisement and social media campaign" after the downloads. (*Id.* at ¶¶ 20, 21).

Plaintiff has provided sufficient evidence for this Court to find that the harm to it is ongoing and immediate, that it cannot be undone through monetary remedies alone, and that if Defendants are not immediately enjoined from using the confidential information obtained from NCA, NCA stands to lose more of its clients.

Accordingly, Plaintiff has provided sufficient evidence that it will likely be irreparably injured absent a restraining order. *See Convergent*, 2019 WL 7423549, at *7 (explaining that in the context of a preliminary injunction, "[t]he evidence support[ed] a finding that the Defendants misappropriated Convergent's trade secrets over several months to position Defendant Wick's consulting firm to solicit Convergent's customers. Accordingly, Convergent ha[d] suffered and [would] continue to suffer irreparable harm in the absence of an injunction.").

Moreover, in compliance with Federal Rule of Civil Procedure 65(b)(1)(B), Plaintiff's counsel indicated that he "has been in communication[] with New York counsel for Defendants who has indicated that he will accept service of process once admitted *pro hac vice*." (Doc. 5 at 15 (emphasis in original)). Plaintiff states that "the Court can readily determine that irreparable harm to NCA is actual and imminent such that providing formal notice and scheduling a hearing on the motion

10

for [a TRO] will cause further delay and additional irreparable harm to Plaintiff." (*Id.* at 15). Plaintiff's counsel also filed a certificate of service indicating that he sent Defendants' counsel a copy of the complaint, civil action order, summons, and the *ex parte* motion for a temporary restraining order and affidavits. (Doc. 6). The Court is satisfied with Plaintiff's counsel's efforts to give notice to the Defendants in accordance with Rule 65(b)(1)(B). Additionally, as explained above, the Court finds that there is sufficient evidence that irreparable injury is ongoing and will result to Plaintiff before Defendants can be heard in opposition. *See* Fed. R. Civ. P. 65(b)(1)(A).

### III.  Balance of harms

The balance of harms weighs in favor of granting a temporary restraining order. If a restraining order is not granted, Defendants can continue using NCA's confidential and proprietary information to poach NCA's customers and staff and benefit from information NCA developed for its business. Additionally, taking the allegations in the Verified Complaint as true, Plaintiff owns the confidential and proprietary information at stake. *See Truepenny People LLC v. Cota*, No. 3:16-cv-424, 2016 WL 9308534, at *2 (N.D. Fla. Oct. 18, 2016) ("[B]ecause Plaintiff owns the trade secrets and confidential and proprietary information is at stake, the harm to Plaintiff outweighs any threat of potential harm to the Defendant from the injunction.").

### IV. Public interest

Lastly, "[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (citations omitted). The Court agrees with other courts that have found that "the public interest is served by protecting trade secrets . . . ." *Freedom Medical, Inc. v. Sewpersaud*, 469 F. Supp. 3d 1269, 1279 (M.D. Fla. 2020) (citation omitted); *see also All Leisure Holidays Ltd. v. Novello*, No. 12-62328-CIV, 2012 WL 5932364, at *6 (S.D. Fla. Nov. 27, 2012) ("The Court concludes that entry of a TRO to protect trade secrets serves the public interest.").

### V. Bond requirement

Federal Rule of Civil Procedure 65(c) specifies that the Court "may issue a . . . temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "[T]he amount of security required . . . is a matter within the discretion of the trial court. . . ." *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005) (citation omitted).

Plaintiff has requested a bond of $2,500 in accordance with Rule 65(c). (Doc. 5 at 15). Plaintiff indicates that it can post this amount pending a hearing on its request for issuance of a preliminary injunction. (*Id.*). The Court finds that a security bond of $2,500 is sufficient to protect Defendants against loss associated

with an erroneous injunction.  Thus, the Court will require Plaintiff to post a bond of $2,500.  The bond amount may be revisited at the time set for the preliminary injunction hearing.

### VI.     Scope of restraining order

Plaintiff has demonstrated entitlement to a temporary restraining order.  However, the Court declines to issue a restraining order of the breadth requested by Plaintiff.  At this early stage and before Defendants have had a meaningful opportunity to respond, the Court finds that Plaintiff has not sufficiently demonstrated that it is substantially likely to succeed on the merits of its tortious interference claim.  Thus, the Court declines to enjoin the Defendants from employing any staff of NCA employed from November 2024 through present day.  The Court further declines Plaintiff's request for Naples Element All Stars to provide a detailed accounting of all funds and other benefits of economic value.  The Court may revisit these issues, if appropriate, at the hearing on the motion for preliminary injunction.

*(rest of page intentionally left blank)*

## CONCLUSION

Because Plaintiff has shown, at least at this preliminary stage of litigation, a substantial likelihood of success on its DTSA claim, a likelihood of irreparable injury in the absence of a temporary restraining order issued before Defendants can be heard in opposition, that the equities weigh in Plaintiff's favor, and that public interest favors injunctive relief, that Plaintiff has met its burden of establishing entitlement to a temporary restraining order.

Accordingly, it is **ORDERED**:

(1) Plaintiff's Ex-Parte Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. 5) is **GRANTED in part** as set forth herein.

(2) Defendants shall **PRESERVE** all documents and information in whatever form it exists relevant to the claims in the Verified Complaint, including, without limitation, all property, data, software, files, and confidential information taken from or created for or by Plaintiff, including its agents, representatives and employees, as well as all communications, documents, and/or data.

(3) Defendants are **ENJOINED** from using or accessing any trade secrets, proprietary information, or confidential information belonging to Plaintiff in any capacity except as it relates to the defense of this instant action.

(4) Defendants are **ENJOINED** from soliciting, doing business with, or servicing any current or prospective client, customer or account, who has been solicited

14

or serviced by Naples Cheer Academy or any affiliate of Naples Cheer Academy until further Order of this Court.

(5) Defendants are **ENJOINED** from conducting their "grand opening" currently scheduled for April 26, 2025, and shall not schedule any subsequent events until further order from this Court.

(6) Plaintiff is **REQUIRED** to post a $2,500 bond with the Clerk of Court before 5:00 p.m. on April 25, 2025.

(7) This Temporary Restraining Order shall remain in effect for fourteen (14) days from the date of this Order unless any party seeks relief otherwise. The Court will set a hearing on Plaintiff's motion for preliminary injunction by separate order.

(8) No later than two (2) days from the date of this Order, Plaintiff shall serve Defendants with process, including a copy of all pleadings in this case and this Order, and file proof of same.

**ORDERED** in Fort Myers, Florida, on April 24, 2025, at 2:00 p.m.

*[signature]*

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE